UNITED STATES DISTRICT COURT OF MASSACHUSETTS

John Doe,

Plaintiff,   v. City of New Bedford; Doe Officers 1–2 and Jane Doe, in their individual and official capacities,  Defendants.


COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF


CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983, EXCESSIVE FORCE, UNLAWFUL ENTRY, FALSE ARREST, DUE PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**John Doe,**
Plaintiff,
 v.
**City of New Bedford, et al.,**
Defendants.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983**
**EXCESSIVE FORCE, UNLAWFUL ENTRY, FALSE ARREST,**
**VIOLATION OF DUE PROCESS, AND INTENTIONAL INFLICTION OF**
**EMOTIONAL DISTRESS**

## I. INTRODUCTION

1.  This is a civil action brought under **42 U.S.C. § 1983**, the Massachusetts Civil Rights
Act **Mass. Gen. Laws ch. 12, § 11I**, and Massachusetts tort law to redress egregious
violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the
United States Constitution and corresponding provisions of Massachusetts law.

2.  On October 29, 2024, officers of the New Bedford Police Department ("NBPD"),
accompanied by an unidentified, unarmed woman who was a clinician ("Jane Doe"),
approached the rear entrance of Plaintiff John Doe's apartment building with his mother.
Plaintiff had deliberately closed and locked the main rear door behind him to prevent
unauthorized access, though the interior kitchen door to his apartment unit remained
unlocked. The officers and Jane Doe gained entry to the apartment house without a
warrant or Plaintiff's consent after a neighbor, unaware of the systemic abuse, innocently
allowed them inside. They subsequently entered Plaintiff's apartment unit without any
legal justification or exigent circumstances. Notably, the officers appeared visibly
uncertain and hesitant about the legality of their actions, which is clearly reflected in the
body-camera footage. Their demeanor and conduct suggest awareness that they were
acting outside the bounds of lawful authority, in a violation of Plaintiff's Fourth
Amendment rights.  Jane Doe, who holds a title but operates as an agent of the police
department, is tasked with responding to calls where 'mental illness' is alleged—a term
Plaintiff contends is a subjective and unscientific label used to justify the deprivation of
liberty for individuals that have had a junk science diagnosis in the past.  In this case,
Jane Doe's actions were not based on objective medical necessity but on a predetermined
institutional objective to detain Plaintiff.

3.  Inside the apartment, officers subjected Plaintiff to excessive and unjustified force, despite the fact that Plaintiff had committed no crime, offered no resistance, and made no statements that could be construed as provocative. Partial body camera footage confirms this, and it is evident that additional footage — which likely captured even more egregious conduct — was either concealed or destroyed by the officers or someone else who got involved evident by a blackout of one of the officers cameras right before and up until after the egregious behavior; it was framed.

4.  The excessive force included multiple deployments of a taser — at one point put up to Plaintiff's mouth — and the brandishing of a firearm held to Plaintiff's head. This abuse occurred while Plaintiff was fully subdued, including during the time both officers simultaneously handcuffed him, without resistance. Despite being fully restrained, officers continued to use force, tightening the cuffs on Plaintiff's left wrist so severely that his palm later turned black due to compromised circulation.

5.  Throughout the encounter, officers treated Plaintiff as if he were a training object — deploying different tactics on him in a manner that appeared uncoordinated, experimental, and dangerously reckless. At several points, the level of violence inflicted placed Plaintiff in fear for his life physically while all his future rights and freedom were at risk.  The physical pain factor was irrelevant, Plaintiff was close to death.  Plaintiff yelled, what Plaintiff found personally regrettable, dark type humor, in a desperate attempt to get through to the officers holding him, beating him, jumping on him, and using weapons on him.  It appeared the officers considered even more actions but hesitated or disagreed on how far to go before, during, and after the violence.

6.  Thereafter, Plaintiff was unlawfully transported to an emergency room, where he was forcibly/coercively injected with an unknown substance against his will while still strapped to a hospital bed—without medical justification or informed consent.  Hospital records (See Exhibit E) confirm Plaintiff was forcibly medicated while restrained, without consent or medical justification.  Plaintiff lost consciousness and later awoke disoriented, in severe pain, and fearing that he had suffered broken ribs, spinal injury, and internal organ damage. Struggling to assess his physical condition, Plaintiff painfully stood and attempted to walk, uncertain whether he was dying. At this vulnerable moment, Plaintiff observed that one, and possibly several, of the involved officers were still present inside the emergency department, despite having no apparent law enforcement role or justification for being there. Their continued presence was intimidating and appeared calculated to suppress Plaintiff's account of the assault and to keep open the option of further harm, including the possibility of fatal restraint or suppression depending on how events developed.  Individuals involved, when they thought Plaintiff was going to die, looked at Plaintiffs mother in an aggressive way systematically. The officers' conduct was unlawful, and their awareness of wrongdoing is evident from their demeanor and hesitation, as reflected in available body camera footage.

7.  Thereafter, Plaintiff was unlawfully committed to a psychiatric facility under **Massachusetts General Laws ch. 123, § 12**, in the absence of any valid statutory criteria or due process protections.  At the facility the plaintiff, in severe pain, was tortured for 63 days.

8.  Key body camera footage was destroyed or withheld by the NBPD in violation of state and federal evidentiary rules and constitutional due process.  The police reports are false, filled with many untrue statements.

9.  These acts are the result of deliberate indifference by the City of New Bedford to widespread, systemic violations by the NBPD, entitling Plaintiff to relief under **Monell v. Department of Social Services, 436 U.S. 658 (1978)**.

10.  Plaintiff seeks compensatory and punitive damages, injunctive relief,  and any further relief deemed just and proper by the Court.

## II. JURISDICTION AND VENUE

11.  This Court has subject matter jurisdiction pursuant to **28 U.S.C. §§ 1331 and 1343**, as this action arises under the Constitution and laws of the United States, including **42 U.S.C. § 1983**.

12.  Supplemental jurisdiction over state law claims is proper under **28 U.S.C. § 1367**.

13.  Although municipalities generally enjoy sovereign immunity from certain claims, the City of New Bedford is subject to suit under **42 U.S.C. § 1983** pursuant to ***Monell v. Department of Social Services*, 436 U.S. 658 (1978)**, because the constitutional violations alleged herein arose from its policies, customs, or deliberate indifference.

14.  Venue is proper in this district under **28 U.S.C. § 1391 and Mass. Gen. Laws ch. 223, § 1**, as all of the events and omissions giving rise to the claims — including Plaintiff's unlawful arrest, injuries, and psychiatric commitment — occurred within the City of New Bedford, located in Bristol County, Massachusetts.

## III. PARTIES

15.  **Plaintiff John Doe** is a resident of New Bedford, Massachusetts.

16.  **Defendant City of New Bedford** is a municipal entity organized under the laws of the Commonwealth of Massachusetts and responsible for the policies, practices, supervision, and conduct of the New Bedford Police Department and its officers.

17.  **Doe Officers 1–2 & Jane Doe**, sued in their individual and official capacities, are NBPD officers whose names will be provided upon discovery.

## IV. FACTUAL ALLEGATIONS

**A. Unlawful Entry and Excessive Force**

18.   On or about October 29, 2024, NBPD officers entered Plaintiff's residence without a warrant, consent, exigent circumstances, or probable cause, in violation of **Payton v. New York, 445 U.S. 573 (1980)**.

19.   After unlawful entry, officers subjected Plaintiff to extreme and excessive force. At no time did Plaintiff offer resistance, act aggressively, or attempt to flee. Plaintiff was compliant, limp, and nonthreatening. Officers never gave any commands such as "you're under arrest" or "put your hands behind your back."

20.   Without justification, an officer, Officer Doe 1, gratuitously deployed a taser at least twice on Plaintiffs body, and at one point pressed the taser toward, up to, and nearly into Plaintiff's mouth.  Officer Doe 1, without provocation, placed, what can reasonably be assumed was a loaded firearm, directly up to the left side of Plaintiff's head.  The instances happened while plaintiff was detained/held/restrained by both Officer Doe 1 and Officer Doe 2.

21.   The officers forced Plaintiff onto his back, and on his stomach, and partially held him up and, held him down in a manner that caused severe rib bruising, a chronic back injury, and suspected internal organ trauma. Officer Doe 2 appeared unsure of their actions and can be seen on body-camera footage hesitating and deliberating over what to do next—indicating he was aware their conduct was unlawful.

22.   Both officers applied a handcuff to Plaintiff.  The handcuff on plaintiff's left wrist with such force and tightness that the interior of Plaintiff's palm, under his pinky and ring finger and above his wrist, turned black in the weeks that followed. After Officer Doe 1 was done with the taser and gun, and both officers were finished mangling, twisting, and forcing Plaintiff around, before during and after having plaintiff handcuffed but not resistant and subdued the entire time, Officer Doe 2 acknowledged that the left handcuff was dangerously tight, noted the potential consequences, hesitated, and had it corrected, but not enough, or it was to late, leaving Plaintiff with a circulatory injury and ongoing pain.

23.   This use of force was objectively unreasonable under the standards set forth in *Graham v. Connor*, 490 U.S. 386 (1989), and reaffirmed in *Raiche v. Pietroski*, 623 F.3d 30 (1st Cir. 2010), where the First Circuit held that officers violated the Fourth Amendment by using significant gratuitous force on a non-resisting individual, and were not entitled to qualified immunity. Here, as in *Raiche*, Plaintiff offered no resistance, posed no threat, and yet was subjected to unjustifiable and excessive physical force.

24.   As a result of the above-described actions, Plaintiff suffered significant pain and suffering and physical injuries, including bruised ribs, taser-induced burns, suspected

internal damage, discomfort, a back injury, a black left hand, severe post traumatic stress disorder, loss of enjoyment of life, fear, and emotional trauma.

## B. Improper Psychiatric Detention (Section 12)

25.  Officers caused Plaintiff to be involuntarily committed under **Mass. Gen. Laws ch. 123, § 12**, alleging mental health concerns without any objective basis.  Jane Doe appeared to act with personal motives with an institutional goal, and her demeanor afterward suggested satisfaction or triumph, as though the outcome had fulfilled a desired objective rather than serving a legitimate law enforcement function.

26.  Plaintiff did not and had not made suicidal or violent threats, and there was no danger justifying emergency hospitalization under **Rogers v. Commissioner of Dep't of Mental Health, 390 Mass. 489 (1983).**

27.  Plaintiff was forcibly medicated with anti-psychotics, confined in a hospital unit under degrading and inhumane conditions, the environment within the facility was inherently coercive. Plaintiff was compelled to outwardly acquiesce to treatment and profess that it was 'helping' under the very real and communicated threat that failure to do so would result in prolonged confinement, increased dosage of unwanted medications, or other punitive measures. This coercion negates any pretense of voluntary or therapeutic consent and underscores the punitive nature of his detention. Plaintiff was deprived of liberty for 63 days. Plaintiff was subjected to cruel and dehumanizing treatment by individuals acting under color of law, and was forced to remain in close proximity to dangerous and sometimes grotesque individuals. During this detention, Plaintiff was **unlawfully deprived of his right to practice his religion**, including being **denied the opportunity to observe significant religious holidays such as Thanksgiving, Christmas Eve, and Christmas, as well as his birthday**, in violation of **the First Amendment to the United States Constitution and 42 U.S.C. § 1983**.

## C. Fabricated Police Reports

28.  In violation of Plaintiff's constitutional and statutory rights, NBPD officers submitted three written reports that contain demonstrably false, misleading, and nonfactual statements:

- **Narrative Report I by Officer Doe 1** included at least **16 nonfactual assertions** and **8 outright falsehoods**;

- **Narrative Report II** contained **7 nonfactual statements** and **8 false statements**;

- **Narrative Report III (Use of Force Supplement)** presented **2 nonfactual statements** and **10 falsehoods**.

29.  These false reports constitute fabrication of evidence under **42 U.S.C. § 1983** and violate established constitutional protections under the **Due Process Clause of the Fourteenth Amendment**, as articulated in *Napue v. Illinois*, **360 U.S. 264 (1959)**, and *Ricciuti v. N.Y.C. Transit Authority*, **124 F.3d 123 (2d Cir. 1997)**, which hold that a police officer violates due process when fabricating evidence that leads to a deprivation of liberty.

30.  The language in these reports is vague, speculative, and lacking objective detail — more akin to guesswork or abstract interpretation than a factual recounting of the events. Critical factual elements are omitted or misrepresented, including the number of officers involved, the sequence of events, and the justification for the use of force.

31.  Under **Massachusetts General Laws ch. 268, § 6A**, it is a crime for a public official, including law enforcement, to knowingly submit a false written report with intent to mislead. The false narratives submitted by NBPD officers not only violated Plaintiff's civil rights but also may constitute prosecutable misconduct under Massachusetts criminal statutes.

32.  The deliberate falsification of official reports was part of an effort to obscure the excessive force used, justify Plaintiff's unlawful arrest and psychiatric detention, and prevent scrutiny of officer conduct. These actions, individually and collectively, reflect a reckless disregard for truth, accountability, and Plaintiff's constitutional rights.  The falsified narratives in the officers' reports (See Exhibit C) contradict objective evidence and body-camera footage.

**D. Spoliation of Body-Camera Evidence**

33.  Key body-camera footage capturing some of the use of force was either destroyed, altered, or withheld, in violation of preservation obligations and its absence constitutes a breach of their duty to preserve evidence once litigation was reasonably foreseeable. The loss of this evidence prejudices Plaintiff's ability to prove the excessive force claims, deprives the fact-finder of critical, objective documentation, and shifts reliance onto the testimony of the same officers whose conduct is in question. The destruction of some of the footage has severely prejudiced Plaintiff's ability to present his case and warrants sanctions under **Federal Rule of Civil Procedure 37(e).  An adverse evidentiary inference** is therefore appropriate and justified under both state and federal law, and may include a presumption that the missing footage would have been favorable to Plaintiff.

34.  Under **Commonwealth v. Morales, 464 Mass. 302 (2013)**, and federal standards (e.g., Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)), this constitutes spoliation and justifies an adverse evidentiary inference.  Law enforcement agencies are required to preserve evidence they know or should reasonably know may be relevant to future litigation. Similarly, under federal standards such as *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003), the failure to preserve electronically stored information (ESI) — particularly where destruction occurs in bad faith or through gross negligence — constitutes **spoliation.**  The Plaintiff seeks appropriate relief because the lost footage would have corroborated Plaintiff's account and demonstrated that the officers used gratuitous, excessive force without legal justification.

## E. Pattern and Practice – Monell Liability

35.  The New Bedford Police Department is/was currently under investigation by the FBI for systemic misconduct (See Exhibit I), coinciding with the abrupt resignation of its Chief of Police. According to reporting by *The Standard-Times*, the department only recently adopted body-worn cameras, and prior to the events described in this complaint, had limited or inconsistent implementation of this critical accountability tool. Relevant media coverage from *The Boston Globe* and *The Standard-Times* documents the investigation, leadership changes, and the department's evolving body-camera policies. As reported in investigative media coverage (See Exhibits F), the NBPD has a documented history of systemic misconduct and inadequate accountability.

36.  These facts are indicative of broader institutional failures, including inadequate training, supervision, and discipline of officers; a persistent tolerance for excessive use of force; and a culture that permits or encourages the tampering and concealment of evidence. Such systemic deficiencies reflect a municipal policy or custom of deliberate indifference to constitutional rights, thereby establishing Monell liability under 42 U.S.C. § 1983. This pattern is further demonstrated by the post-complaint harassment and surveillance of Plaintiff, as detailed in Paragraphs 43-49, infra, which evidences a policy of retaliation and intimidation.

37.  Subsequent to the filing of the original complaint, and further demonstrating the City of New Bedford's deliberate indifference and official policy of misconduct, the New Bedford Police Department held an awards ceremony in or around the Summer of 2025. At this ceremony, the Department presented awards to officers for actions involving the detention and transportation of individuals described as 'mentally ill.'

38.  During this ceremony, the Department displayed body-worn camera footage of these interactions to an audience of colleagues, friends, and community members. This public celebration and ratification of the conduct alleged in this complaint—namely, the involuntary seizure and transport of individuals under the pretext of mental health concerns—sends a clear message that such actions are not only tolerated but rewarded by

the City. This reinforces the de facto policy and custom alleged in Paragraph 33 et seq. and directly contradicts any claim that the violations suffered by Plaintiff were isolated incidents.

## F. Damages

39.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial and ongoing harm, including:

a. **Physical injuries**, including bruised ribs, wrist and hand trauma, suspected internal organ damage, taser-induced burns, chronic back pain, and necrosis/blackening of the palm, all of which caused prolonged physical suffering;

b. **Psychological harm**, including severe post-traumatic stress disorder (PTSD), emotional distress, anxiety, mental anguish, and a loss of enjoyment of life;

c. **Economic and social harm**, including temporary loss of employment, reputational harm, financial hardship, and disruption to Plaintiff's living situation, including missed holidays and personal milestones during involuntary psychiatric detention;

d. **Emotional impact from loss of companionship**, as Plaintiff's young pet bird, who witnessed the traumatic incident, was subsequently removed by others during Plaintiff's hospitalization, adding to the emotional toll.

40.  Plaintiff made multiple good-faith efforts to resolve this matter without litigation (See Exhibits A–B). After requesting 30 days to assign a claim number and adjuster, the City failed to act and later cited a "backlog" as justification—a delay tactic that demonstrates indifference to the seriousness of Plaintiff's injuries and claims (See Exhibit A).

a. The City's failure to act was exemplified by a pattern of avoidance and unprofessionalism from its Solicitor's Office in June 2025. Plaintiff's documented phone calls reveal a cycle of broken promises and refusal to provide basic information:

-On **June 16, 2025**, a representative of Solicitor Michael Harrington promised to obtain and call back with insurance claim information but failed to do so.

-On **June 17, 2025**, a staff member deferred Plaintiff to Mr. Harrington, who was reported to be absent.

-On **June 18, 2025**, a staff member stated he was not authorized to provide the information and again reported Mr. Harrington's absence.

This conduct, culminating in the excuse of being "busy" shows a lack of good faith and a deliberate strategy to delay and obstruct Plaintiff's pre-litigation efforts, further evidencing the City's indifference.

G. **Subsequent Events and Continuing Violations – The September 5, 2025, Incident.**

41. On September 5, 2025, Defendant Jane Doe and officers of the NBPD again arrived at Plaintiff's residence at 48 Smith Street after a visit from Plaintiff's father. Despite Plaintiff being calm, non-threatening, and presenting no danger to himself or others, the officers, directed by Jane Doe, surrounded the property and prepared to enter his apartment by force.

42. After Plaintiff made multiple unsuccessful attempts to contact police leadership and several statements of being no danger to himself or others, hasn't ever been a danger to himself or others, never said he was a danger to himself or others, and there was no emergency, Jane Doe and police trying to hide their plan put plaintiff in imminent danger of a violent entry and arrest started a negotiation with police and they gave him options; plaintiff was narrowly able to get onto a stretcher and into an ambulance before being transported to St. Luke's Hospital.

43**.** Upon his release from the hospital within hours—which itself demonstrates the lack of any legitimate basis for the detention—Plaintiff discovered that the NBPD had gained unauthorized entry to his apartment through a kitchen window further demonstrating a pattern of unlaw]ful entry and intimidation.

44**.** This incident, involving the New Bedford Police (including Jane Doe) and the same pattern absent any emergency, constitutes a continuing violation of Plaintiff's rights under the Fourth and Fourteenth Amendments and underscores the systemic nature of the misconduct.

45. Plaintiff's reasonable fear of repeated, unlawful detention and forced medical treatment is compounded by the fact that, following his release from the psychiatric facility in 2025, a medical group known as Boston Neurologic—which specializes in neurological procedures and interventions—established a presence within the City of New Bedford. The proximity and availability of such a facility, which performs advanced and invasive procedures, increases the risk that the City and its agents will subject Plaintiff or others to such treatments without consent during future unlawful detentions, thereby exacerbating the threat to Plaintiff's bodily integrity and mental autonomy.

H. **Pattern of Harassment, Surveillance, and Retaliation**

46. The systemic misconduct alleged in this complaint is not confined to discrete encounters but constitutes a continuous pattern of harassment, surveillance, and intimidation directed at Plaintiff in retaliation for his efforts to seek legal redress and to deter him from exercising his constitutional rights.

47. On or about **August 15, 2025**, Plaintiff was the target of a coordinated surveillance and intimidation effort. While parked near Clasky Common Park (adjacent to Pope Street), Plaintiff was approached by a black SUV with tinted windows, consistent with an unmarked police vehicle, which parked directly behind his car. An individual who is believed to be, or is strikingly similar in appearance to, Defendant Jane Doe exited the vehicle with a companion and sat on a nearby bench.

48. Moments later, a white SUV parked unnecessarily close to the front of Plaintiff's vehicle, despite ample available parking space. The driver of the white SUV exhibited agitated and hesitant behavior, exiting and re-entering his vehicle while appearing to take undue interest in Plaintiff, creating a blocking maneuver to hide himself the entire time and a palpable sense of threat. This coordinated positioning by the two vehicles effectively trapped Plaintiff's vehicle.

49. Shortly thereafter, 10 or less minutes later, a man driving a black SUV, whom Plaintiff believes to be an associate of Dr. David Henderson of Boston Medical Center (an individual and entity connected to Plaintiff's prior involuntary treatment), drove past Plaintiff at his residence of 48 Smith Street, New Bedford. The presence of this individual suggests coordination between the New Bedford Police Department's agents and the medical establishment alleged to be complicit in Plaintiff's unlawful detentions.

50. This incident mirrors a prior, similar event, indicating a sustained pattern of stalking and intimidation by Defendants and their associates. The purpose of this conduct is to intimidate Plaintiff, instill a reasonable fear of imminent, repeated state-sponsored violence and involuntary confinement, and dissuade him from pursuing this litigation.

51. This pattern is further evidenced by the events of **September 5, 2025** (detailed in Paragraphs 38-42), where Defendant Jane Doe again initiated an unlawful detention effort. These repeated encounters, absent any legitimate emergency or lawful basis, demonstrate a de facto policy and custom of using the threat of psychiatric seizure as a tool of harassment, control, power, financial gain, and social acceptance.

52. The City of New Bedford, through the actions of its police department and its collaborative relationship with medical providers like Boston Medical Center and Boston Neurologic, has created a system whereby individuals like Plaintiff are subjected to a continuing threat of unlawful detention, excessive force, and medical coercion. This system is designed to suppress dissent and punish those who challenge its authority, as evidenced by the post-complaint harassment detailed herein.

## V. CAUSES OF ACTION

**COUNT I: Violation of the Fourth Amendment – Excessive Force**

**(Pursuant to 42 U.S.C. § 1983)**
**Against: Doe Officers 1–3 and any other officers identified through discovery**

**Legal Basis:**
This claim arises under the Fourth Amendment to the United States Constitution and is actionable pursuant to 42 U.S.C. § 1983. The use of excessive force by law enforcement violates clearly established rights under *Graham v. Connor*, 490 U.S. 386 (1989). Defendants' conduct violated clearly established constitutional rights under the Fourth Amendment, as recognized in *Raiche v. Pietroski*, 623 F.3d 30 (1st Cir. 2010), where the First Circuit held that the use of substantial force against a non-resisting individual is objectively unreasonable and not protected by qualified immunity.

**Elements of the Claim:**
To establish a claim of excessive force under § 1983, Plaintiff must show:

1. Defendants were acting under color of law;

2. Defendants used force against Plaintiff during a seizure;

3. The force used was objectively unreasonable in light of the facts and circumstances.

**Factual Support:**

- Defendants, acting under color of state law as New Bedford Police Officers, entered Plaintiff's home.

- Plaintiff was unarmed, nonviolent, and posed no threat.

- Despite this, Defendants used a taser gun, jumped on Plaintiff, beat him, and pointed a loaded firearm at him.

- This force was gratuitous, excessive, and unreasonable under the totality of circumstances, especially in light of Plaintiff's nonthreatening conduct.

- The use of such force constitutes a violation of Plaintiff's clearly established Fourth Amendment rights.

**COUNT II: Violation of the Fourth Amendment – Warrant-less Entry and False Arrest**

**(Pursuant to 42 U.S.C. § 1983)**
**Against: Doe Officers 1–3 and any other officers identified through discovery**

**Legal Basis:**
This claim is brought under 42 U.S.C. § 1983 for violations of Plaintiff's Fourth

Amendment rights, including the right to be secure in one's home and the right to be free from unlawful seizure. These rights were clearly established under *Payton v. New York*, 445 U.S. 573 (1980) (warrant-less home entry), and *Terry v. Ohio*, 392 U.S. 1 (1968) (unreasonable seizure). Defendants falsified reports (Exhibit C) to retroactively justify Plaintiff's unlawful seizure, violating due process under Napue v. Illinois.

**Elements of Warrant-less Entry Claim:**

1. Defendants entered Plaintiff's home;

2. Was without a judicial warrant;

3. No legally valid exception to the warrant requirement applied.

**Elements of False Arrest Claim:**

1. Plaintiff was seized or detained;

2. There was no probable cause to justify the seizure.

**Factual Support:**

- Defendants entered Plaintiff's residence without a warrant.

- No exigent circumstances existed: Plaintiff was not a danger to others, and the initial 911 call was not made by Plaintiff or alleging criminal conduct.

- A neighbor, unaware of the abuse or facts, permitted entry; Plaintiff did not consent.

- Once inside, Defendants seized Plaintiff and transported him against his will.

- There was no probable cause to arrest or detain Plaintiff.

- These actions violated clearly established Fourth Amendment rights.

## Count III: Monell Liability – Unconstitutional Policy, Practice, or Custom (42 U.S.C. § 1983)

Defendant City of New Bedford is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because Plaintiff's injuries were caused by the City's policies, customs, or practices—specifically, its deliberate indifference to:

- The routine use of excessive force by NBPD officers;

- Inadequate training, supervision, and discipline of officers regarding use of force, unlawful entry, psychiatric commitments, and body-camera protocols;

- A pattern and culture of fabricating reports and tampering with or destroying evidence.

These systemic failures constitute a de facto policy or custom that was the moving force behind the constitutional violations suffered by Plaintiff, including unlawful entry, excessive force, unlawful detention, and deprivation of First and Fourteenth Amendment rights. The City's failure to respond meaningfully to Plaintiff's per-litigation claims (See Exhibits A, B) reflects deliberate indifference to systemic misconduct.

**Post-Incident Theft and Harassment**

53. Following the October 29, 2024,  incident, Plaintiff discovered that his Key Bank debit card was missing from his vehicle. Plaintiff had previously observed an individual believed to be an off-duty police officer looking over his shoulder at a Cumberland Farms store prior to the incident, suggesting an attempt to obtain his PIN, post a visit from police questioning Plaintiff about his 2023 adult female roommate they said was missing.

54. Plaintiff is also missing a vehicle registration document from his vehicle, which was accessed by the NBPD during or after the October 29, 2024, incident.

55. These actions constitute theft and further demonstrate the Defendants' reckless disregard for Plaintiff's property and constitutional rights.


**Count IV: Spoliation of Evidence**

Defendants' failure to preserve critical body-camera footage—whether by destruction, alteration, or deliberate withholding—constitutes spoliation of evidence and warrants an adverse evidentiary inference. This misconduct violates established preservation duties once litigation was reasonably foreseeable. Under *Arizona v. Youngblood*,  488 U.S. 51 (1988), and applicable state and federal standards (e.g.,  *Commonwealth v. Morales*, 464 Mass. 302 (2013); *Zubulake v. UBS Warburg LLC*,  220 F.R.D. 212 (S.D.N.Y. 2003)), such conduct supports due process claims and  entitles Plaintiff to a jury instruction presuming that the destroyed evidence would have been favorable to him. The missing footage significantly prejudices Plaintiff's ability to prove his claims, as it captured key moments of excessive force and officer deliberation. The NBPD's destruction of footage prevented Plaintiff from fully disproving the falsehoods in Exhibit C.

**Count V: Unlawful Psychiatric Detention (M.G.L. c. 123, § 12)**

Defendants' invocation of M.G.L. c. 123, § 12 to detain Plaintiff involuntarily was improper, lacking both the statutory prerequisites and any objective evidence of mental illness while factually there is and was no invisible illness, dangerousness, or emergency circumstances. This misuse of the civil commitment process violated Plaintiff's rights under state law and constituted a deprivation of liberty without due process, in violation of the Fourteenth Amendment. The detention was not based on a legitimate

psychiatric evaluation, but rather on unsupported claims, misrepresentation, and apparent retaliatory or punitive motives, rendering the confinement unlawful and unconstitutional under the Fourteenth Amendments due process clause.

**Count VI: Intentional Infliction of Emotional Distress**

Defendants engaged in conduct so extreme and outrageous as to exceed all bounds of decency tolerated in a civilized society. Their actions—including the excessive use of force, unlawful confinement, false reporting, forced psychiatric medication, and degrading treatment—were carried out with actual or constructive knowledge that such conduct was substantially certain to cause Plaintiff severe emotional distress. Under *Agis v. Howard Johnson Co.*, 371 Mass. 140 (1976), this conduct satisfies the elements for intentional infliction of emotional distress under Massachusetts law.

**Count VII: Violation of Massachusetts Civil Rights Act (M.G.L. c. 12, § 11I)**

Defendants, through threats, intimidation, or coercion, interfered with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States and the Commonwealth of Massachusetts, including freedom from unlawful searches, seizures, excessive force, and involuntary confinement.

**Count X: Fourteenth Amendment Procedural Due Process (42 U.S.C. § 1983)**

Defendants deprived Plaintiff of liberty and bodily integrity without constitutionally adequate process. This includes:

- detaining Plaintiff without a warrant or judicial review,

- forcibly administering psychiatric treatment without medical justification,

- failing to inform Plaintiff of the basis for his detention,

- Lack of hearing before forced medication/commitment (*Washington v. Harper*, 494 U.S. 210 (1990)

- Denying him the opportunity to contest the detention before a neutral decision-maker.  Under *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), such deprivations without due process violate the Fourteenth Amendment.

**Count XI: Assault (Massachusetts Common Law)**

Defendants committed assault when they, without justification, threatened Plaintiff with physical harm through the display of a loaded firearm, a taser gun, and aggressive conduct.  Under Massachusetts law, assault is the intentional creation of a reasonable apprehension of imminent harmful or offensive contact.  Plaintiff reasonably feared immediate harm, assumed he was going to die on his living room floor, due to the officers' conduct and weapons use.

After plaintiff was released from the facility December 30, 2024 and sent demand letters to the city and filed this complaint per-ammeded the city invested money into the police department to take people that have a diagnosis or look mentally ill out of public and into psychiatric hospitals and facilities to be drugged and treated at their discretion.

**Count XII: Battery (Massachusetts Common Law)**

Defendants committed battery by intentionally making harmful or offensive physical contact with Plaintiff without consent or legal justification, including wrestling, handcuffing, and tasing him.  Under Massachusetts law, battery is the intentional, unpermitted touching of another. This count is supported by Defendants' use of force absent legal cause.

**Count XIII: False Imprisonment (Massachusetts Common Law)**

Plaintiff was unlawfully confined without legal justification or a valid warrant, both during the on-scene detention, while strapped to a stretcher, strapped to a bed in an emergency room followed by the involuntary psychiatric commitment in the facility constructed/opened in 2015, post Plaintiffs unlawful 2013 hospitalization in New Bedford at St. Luke's Hospital where Plaintiff was taken October 29, 2025.

To establish false imprisonment in Massachusetts, a plaintiff must show:

1. The defendant intentionally confined the plaintiff,

2. The plaintiff was conscious of the confinement,

3. The plaintiff did not consent to the confinement, and

4. The confinement was not otherwise privileged.
   Each of these elements is satisfied by the facts presented.

**These actions constitute a violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I, and entitle Plaintiff to compensatory damages, punitive damages, attorneys' fees (if represented), and appropriate equitable and injunctive relief.**

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

- **Compensatory damages** in an amount no less than $75,000,000, jointly and severally against all Defendants, including the events of September 5, 2025, which exacerbated Plaintiff's pre-existing emotional distress and fear for his safety for the following harms:

**Physical Injuries & Pain and Suffering**

- Bruised ribs, chronic back pain, chronic hand pain, and suspected internal organ damage caused by excessive force (*Graham v. Connor*, 490 U.S. 386 (1989) (unreasonable force violates Fourth Amendment));

- Severe wrist trauma and necrosis/blackening of the palm due to maliciously tight handcuffing (*Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005) (tight handcuffing can constitute excessive force));
- Taser-induced burns and lingering physical trauma (*Bryan v. MacPherson*, 630 F.3d 805, 825–26 (9th Cir. 2010) (taser use on non-resistant subject violates constitutional rights)).

**Psychological & Emotional Harm**

- Severe post-traumatic stress disorder (PTSD), anxiety, and mental anguish (*Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (emotional distress compensable under § 1983));
- Loss of enjoyment of life and enduring emotional distress (*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (damages for intangible harms permitted)).

**Economic & Social Damages**

- Lost wages and financial hardship due to unlawful detention and forced hospitalization (*Carey v. Piphus*, 435 U.S. 247, 264 (1978) (compensation for economic losses));
- Reputational harm from false police reports (*Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (government-inflicted stigma violates due process));
- Disruption to living situation, including deprivation of holidays, birthdays, and personal milestones during unlawful psychiatric detention (*Youngberg v. Romeo*, 457 U.S. 307, 324 (1982) (right to humane conditions of confinement)).

**Loss of Companionship & Additional Emotional Distress**

- Trauma from separation of Plaintiff's pet bird, who witnessed the violent incident (*Levine v. Knowles*, 197 F. Supp. 2d 4, 11 (E.D.N.Y. 2002) (recognizing emotional harm from loss of pet companionship)).

**These damages are necessary to fully compensate Plaintiff for the profound and lasting injuries inflicted by Defendants' unlawful conduct, as detailed in this Complaint.**

- **Punitive damages** against Officers Doe 1-3 in their personal capacities of at least $25,000,000 to punish their extreme misconduct, and willful, malicious, and sadistic abuse of power and prevent future abuses. These officers showed cruel and intentional disregard for Plaintiff's rights when they:

  - Entered his home

- Used a taser on him unnecessarily
- Pressed a gun to his head while he was restrained
- Falsified police reports to cover their actions
- Forced dangerous medication on him
- Demonstrated conscious awareness of their misconduct's illegality

The law allows large punitive awards for such terrible behavior (Smith v. Wade, 461 U.S. 30). Their actions were clearly illegal (Raiche v. Pietroski, 623 F.3d 30), shockingly cruel (BMW v. Gore, 517 U.S. 559), and done with evil intentions (Iacobucci v. Boulter, 193 F.3d 14). **This extreme punishment is needed because they abused their power in ways no officer ever should."**

- **Injunctive relief** requiring the City of New Bedford and its Police Department to implement reforms, including but not limited to:

  - Improved **use-of-force training and accountability mechanisms**;

  - Mandated **preservation and disclosure of body-worn camera footage**;

  - Eliminate the application of **M.G.L. c. 123, § 12**, to ensure that psychiatric commitments are made solely based on objective, clinically supported evidence, and require explicit informed consent from the individual before commitment or treatment occurs. All psychiatric/mental health practices rely heavily on subjective and unsupported criteria, resulting in unjust detentions that violate fundamental rights and due process;

  - A permanent injunction **prohibiting the New Bedford Police Department and its LEAD (Law Enforcement Assisted Diversion) team** and other programs created from participating in or influencing decisions related to mental health treatment, evaluation, or hospitalization of civilians, including involuntary transport or commitment, absent a valid warrant.

  - An order mandating the **dissolution or suspension of programs** operated by the New Bedford Police Department or, in the alternative, **removing the departments authority and team's authority to initiate or recommend psychiatric detentions, evaluations, or hospitalizations**, on the grounds that such power is being exercised in a manner that violates the constitutional rights of Plaintiff and all individuals in the city, including the rights to due process, bodily integrity, and freedom from unreasonable seizure.

  - Any such other injunctive or declaratory relief as the Court deems just and proper to prevent further use or abuse of psychiatric commitment powers by law enforcement.

- An injunction prohibiting the NBPD from using emergency medical services for non-medical transports, particularly for individuals being taken for psychiatric evaluation in the absence of a physical medical emergency.

- A permanent injunction prohibiting the City of New Bedford and its agents from using resources to detain, transport, or commit individuals based solely on alleged 'mental illness,' withdrawal from drugs, or a missed medical appointment, in the absence of a specific, credible, and imminent threat of serious physical harm to themselves or others, as required by law.

- An injunction prohibiting the City and its agents from collaborating with or facilitating the surveillance and harassment of Plaintiff by private individuals or entities.

- An injunction **prohibiting the City of New Bedford from maintaining any policy, custom, or practice** that results in individuals being subjected to involuntary neurological or intensive psychiatric procedures at facilities like Boston Neurologic, when such subjection is based on police intervention absent a legitimate medical emergency and without due process of law.

- **Non Injunctive Relief**

  - **A jury instruction permitting an adverse inference** against Defendants due to the spoliation (destruction, alteration, or withholding) of evidence.

  - **Declaratory Relief** declaring that Defendants' actions violated Plaintiff's constitutional rights under the Fourth, First, and Fourteenth Amendments, as well as corresponding provisions of Massachusetts law.

  - **An Award of Attorneys' Fees and Costs** pursuant to 42 U.S.C. § 1988, M.G.L. c. 12, § 11I, or any other applicable statute or rule, along with pre- and post-judgment interest as allowed by law.

  - **Restitution and reimbursement** for any medical, and related expenses incurred as a direct result of Defendants' unlawful conduct.

  - An order pursuant to **Fed. R. Civ. P. 37(e)** imposing appropriate sanctions against Defendants for their failure to preserve relevant body-worn camera footage, including an **adverse inference** that the lost evidence would have been favorable to Plaintiff's claims.

  - Any **other relief** the Court deems just, proper, and equitable under the circumstances.

## VII. EXHIBITS

A-E: claim letters, police reports, hospital log, news articles

**Respectfully submitted,**
John Doe, Pro Se

**JURY TRIAL DEMANDED**
**Respectfully submitted,**
John Doe
Pro Se Plaintiff
48 Smith Street #1
New Bedford, MA 02740
(617) 455-1098
9/26/2025